IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHELBY TODD ROPP,                           Case No. 3:13-cv-00468-MA

             Plaintiff,                        OPINION AND ORDER

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

            Defendant.

RICHARD A. SLY
209 S.W. Oak Street, Suite 102
Portland, OR 97204

TIM WILBORN
P.O. Box 370578
Las Vegas, NV 89137

     Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

JORDAN D. GODDARD
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

     Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Shelby Todd Ropp seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on January 7, 2010, alleging disability beginning October 9, 2009 due to paranoid schizophrenia, depression, bilateral end-stage hip osteoarthritis, morbid obesity, lumbar degenerative disc disease, bilateral carpal tunnel syndrome, and ulnar neuropathy. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on September 23, 2011, at which plaintiff appeared with her attorney and testified. A vocational expert, Erin Martz, also appeared and testified. On March 8, 2012, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the

ALJ's decision became the final decision of the Commissioner for purposes of review.[1]

Born in 1968, plaintiff was 41 years old on his alleged disability onset date and 43 years old at the time of the hearing. Plaintiff earned a GED and attended college for two years. Plaintiff has past relevant work as an auto mechanic and welder. Plaintiff has a history of methamphetamine abuse.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012).

---

[1]Plaintiff filed a previous application for a period of disability and disability insurance benefits and supplemental security income on December 29, 2006, alleging disability beginning September 15, 2006. Plaintiff's previous application was denied in a written decision by an ALJ on October 14, 2009, and the Appeals Council denied review. Plaintiff did not appeal that decision, and res judicata applies to the adjudicated period. Tr. 19. Plaintiff's previous application is not at issue in his current action.

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured.    42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments:    methamphetamine abuse, paranoid schizophrenia vs. substance induced psychotic disorder, severe bilateral end stage hip osteoarthritis, morbid obesity, narcotic pain medicine dependence, and mild lumbar degenerative disc disease.    At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment. The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform less than a full range of sedentary work in that plaintiff is limited to standing/walking no more than two hours out of an eight hour day; he can occasionally climb, kneel, crawl, and reach overhead; he should avoid concentrated exposure to vibration and hazardous conditions; and he is limited to performing simple and semi-skilled work.

At step four, the ALJ found plaintiff is unable to perform any past relevant work.    At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and

residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as table worker, assembler, and stuffer. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from October 9, 2009 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate and include limitations described in the opinion of examining physician Tatsuro Ogisu, M.D.; (2) the ALJ failed to properly account for plaintiff's mental limitations in the RFC; (3) the ALJ improperly evaluated lay testimony from Elissa Ropp, plaintiff's wife; and (4) based on these errors, the ALJ posed an incomplete hypothetical to the Vocational Expert.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hill, 698 F.3d at 1159 (internal quotations omitted); Valentine, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or

detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Batson v. Commissioner Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.    The ALJ Did Not Err in Evaluating the Opinion Of Dr. Ogisu

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. Id. In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible. Bray v. Comm'r of

Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); Batson, 359 F.3d at 1195.

Plaintiff complains that the ALJ erred in failing to address Dr. Ogisu's opinion that plaintiff could perform only occasional non-repetitive handling.  On March 15, 2010, Dr. Ogisu conducted a comprehensive orthopedic examination.  Tr. 298-99.  During his examination with Dr. Ogisu, plaintiff reported that he had ulnar compression neuropathy, and that he had recently undergone nerve conduction studies with "borderline results," which Dr. Ogisu interpreted to mean that surgery was not clearly indicated.  In relevant part, Dr. Ogisu noted that plaintiff had "[p]robable ulnar compression neuropathy.  The findings are not entirely classic. Please refer to the aforementioned electro-diagnostic studies for correlation and to rule out a more proximal lesion, especially as Spurling test is positive on the left."  Tr. 299.

In his summary, Dr. Ogisu opined that plaintiff's functional limitations are:

> Estimated ability to do work-related activities during an 8-hour day is as follows: sitting – no restriction; standing – up to 6 hours, perhaps slightly more; walking – up to half the time; lifting – up to 50 pounds occasionally and 25 pounds frequently; carrying – up to 25 pounds occasionally; and handling – at least occasionally on a nonrepetitive basis.  He is able to hear at normal conversational volume and speak without difficulty.  He is able to travel using standard transportation.

Tr. 299.

According to plaintiff, the ALJ was required to provide clear and convincing reasons for rejecting Dr. Ogisu's opinion about his handling limitation or was required to incorporate the limitation into the RFC.  Plaintiff argues that because the ALJ failed to do either, when Dr. Ogisu's handling limitation is credited as a matter of law, the Vocational Expert testimony establishes that plaintiff cannot perform any of the jobs identified at step five, and consequently, plaintiff is disabled under the Act.  I disagree.

Dr. Ogisu's opinion that plaintiff had any handling limitations is contradicted by the opinion of Neal E. Berner, a nonexamining physician who completed a Physical Functional Capacity Assessment on April 14, 2010.  Tr. 318-25.  Dr. Berner opined that plaintiff was limited to occasional overhead reaching due to his cervical degenerative disc disease and degenerative joint disease. However, Dr. Berner found that plaintiff did not have any other manipulative limitations, such as handling, fingering or feeling. Tr. 321.  Therefore, the ALJ was required to provide specific and legitimate reasons, supported by other substantial evidence in the record, for discounting Dr. Ogisu's opinion.

In the decision, the ALJ gave "limited weight" to Dr. Ogisu's overall modified medium residual functional capacity assessment because "medical records reflect that [plaintiff] has a bilateral hip impairment not evaluated by Dr. Ogisu (and possibly not reported by [plaintiff]) that causes more restrictive limitations."

Tr. 27.  As the ALJ accurately noted, Dr. Ogisu's examination report reflects that plaintiff failed to disclose that he suffered severe to moderate bilateral hip degenerative joint disease.  Tr. 297-99.  Moreover, the record reflects that plaintiff's hip condition has been ongoing for the duration of the adjudicatory period at issue.  *See, e.g.,* Tr. 488-89, 493, 555; *see also* Tr. 92 (plaintiff's earlier disability application also alleged degenerative joint disease of the hips).  Substantial evidence supports the ALJ's determination to discount Dr. Ogisu's overall opinion because it did not reflect all of plaintiff's limitations. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Although the ALJ did not specifically discount Dr. Ogisu's handling limitation, the ALJ properly considered the alleged limitation when discussing plaintiff's elbow pain and numbness in his hands.  At step two, the ALJ discussed the lack of objective findings to verify the ulnar nerve compression, and determined that plaintiff's elbow pain and hand numbness are nonsevere medically determinable impairments.  Tr. 22.  Contrary to the "borderline" results plaintiff reported to Dr. Ogisu, the nerve conduction studies performed in November of 2009 yielded completely normal

results.  Tr. 544.  Substantial evidence wholly supports the ALJ's step two findings and they are unchallenged by plaintiff.

Additionally, the ALJ appropriately considered this nonsevere impairment when discounting plaintiff's subjective complaints. Carmickle v. Commissioner Soc. Sec. Admin, 533 F.3d 1155, 1164 (9th Cir. 2008)(all severe and nonsevere impairments must be considered in the RFC); 20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2) (same).  To be sure, the ALJ discounted plaintiff's alleged elbow pain and hand numbness, noting that plaintiff's allegations were inconsistent with reports to his medical providers that his pain was well-controlled with gabapentin and a TENS unit. Tr. 28. Notably, plaintiff does not challenge the ALJ's negative credibility determination.

In short, I conclude that the ALJ provided a specific and legitimate reason for discounting Dr. Ogisu's opinion that is supported by substantial evidence in the record.   Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Moreover, the ALJ appropriately accounted for plaintiff's alleged handling limitations elsewhere in the decision, and the ALJ's findings are supported by substantial evidence. Valentine, 574 F.3d at 691-93 (ALJ appropriately accounted for limitations in the RFC).  Based on the record before me, the ALJ rationally interpreted the evidence concerning plaintiff's alleged handling limitation, and did not err in assessing Dr. Ogisu's opinion.

II.  **The ALJ's RFC Was Not Inconsistent With Step Three Findings**

Plaintiff complains that after finding plaintiff's mental limitations severe at step two and determining that he has moderate limitations in performing activities of daily living, social functioning, and maintaining concentration, persistence, and pace at step three, those deficits were not adequately captured in the RFC. According to plaintiff, the ALJ was required to translate the step three paragraph B findings into work-related functions in the RFC. I disagree.

To begin, an ALJ's step two finding that a mental health impairment is "severe" or step three finding that a claimant has moderate limitations is not an RFC assessment. *See* SSR 96-8p, 1996 WL 374184, *4 (July 2, 1996)("the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process"). The RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ must also evaluate "all of the relevant medical and other evidence." Id.

An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical

testimony.   <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008); <u>see</u> <u>Bayliss</u>, 427 F.3d at 1217 (the ALJ is only required to identify specific, credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

In this case, in the RFC, the ALJ limited plaintiff to "simple or semi-skilled" work as defined in 20 C.F.R. §§ 404.1564 and 416.964.[2]   Plaintiff complains that his limitation to "simple" work does not capture his deficits because his mental illness "might" prevent him from maintaining concentration, persistence, and pace for a full work week and "might" prevent him from accepting instructions or criticism from supervisors or interact appropriately with coworkers.  However, plaintiff fails to identify any specific, credited medical evidence establishing these limitations.

Indeed, the unchallenged credited medical evidence establishes otherwise.  When fashioning plaintiff's RFC, the ALJ specifically discussed the evidence from agency nonexamining physicians, who opined that plaintiff is capable of performing "at least simple routine tasks."  Tr. 316.  Agency physician Kordell N. Kennemer,

---

[2]The Commissioner concedes that semiskilled work may not adequately capture plaintiff's limitations, but contends that any such error is harmless because the ALJ also limited plaintiff to simple work. I agree.

Psy.D., completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment (MRFC) on April 2, 2010. Tr. 300-317. In the MRFC, Dr. Kennemer opined that plaintiff had moderate limitations in only two categories: (1) the ability to carry out detailed instructions, and (2) the ability to maintain attention and concentration for extended periods. Tr. 314. Importantly, Dr. Kennemer indicated that plaintiff was *not* significantly limited in his "ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 315. On August 31, 2010, Bill Hennings, Ph.D. affirmed Dr. Kennemer's MRFC.

Citing the evaluations by Drs. Kennemer and Hennings, the ALJ gave the opinions that plaintiff was limited to simple routine tasks on a regular basis "some weight." Tr. 28. Additionally, the ALJ found that when plaintiff is medication compliant, his "attention and concentration are intact," citing specific record evidence. The ALJ discussed treatment notes from Brian Esparza, M.D., plaintiff's treating mental health physician, that consistently indicated that plaintiff's concentration and attention were intact and that his mental health symptoms were improving with medication. Tr. 28, 272, 275, 278. The ALJ's findings are supported by substantial evidence. Significantly, plaintiff does

not challenge the ALJ's assessment of Drs. Esparza or Kennemer's opinions.

Therefore, the RFC limiting plaintiff to simple and routine tasks was consistent with the credited medical evidence of record and relevant Ninth Circuit law.   Plaintiff has identified no specific medical testimony establishing limitations in activities of daily living, social functioning, concentration, persistence, and pace that were not accounted for in the ALJ's decision, and the ALJ was not required to include those limitations into the RFC when posing the hypothetical to the VE.   Accordingly, I find no error in the ALJ's RFC assessment.

### III.  The ALJ Did Not Err in Assessing the Lay Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account.   Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).   The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so.   Valentine, 574 F.3d at 694.

Plaintiff's wife, Elissa Ropp completed an Adult Function Report on February 23, 2010.   Tr. 218.   In that report, Ms. Ropp indicated that plaintiff is unable to care for their young children without assistance and occasionally needs reminding to bathe and

14 - OPINION AND ORDER

take medications.   Ms. Ropp described that plaintiff is able to cook simple meals daily, but no longer can cook multi-course meals daily. Ms. Ropp stated that plaintiff drives and shops for groceries once a week for a couple of hours.   Ms. Ropp noted that plaintiff swims and lifts weights at community center daily, attends church weekly, and goes to doctors' appointments independently.   Tr. 218, 224.   Ms. Ropp stated that plaintiff described hearing and seeing things that are not there and feels cameras are watching him.   Ms. Ropp stated that plaintiff can pay attention for five to ten minutes, has difficulty following spoken instructions, and cannot handle stress.   Tr. 225-226.

Ms. Ropp also submitted a letter dated September 23, 2011, in which she indicated that plaintiff is affected by arthritis in his hips and knees, carpal tunnel in his wrists, chronic depression and schizophrenia.  Tr. 255.  Ms. Ropp stated that plaintiff is bed-ridden with pain for days after performing even minor auto repairs. Ms. Ropp described that plaintiff suffers bouts of depression that can last for 20 hours a day, lasting for weeks.  Ms. Ropp noted that she has observed plaintiff in pain rising from sitting and ascending or descending stairs.  Id. at 256.

In the instant action, plaintiff argues that the ALJ failed to provide sufficient reasons for discounting Ms. Ropp's statements concerning plaintiff's limited use of his hands and his inability

to sustain concentration over the course of a full work day. I disagree.

In the decision, the ALJ gave Ms. Ropp's statements about plaintiff's physical limitations "some weight." Tr. 28. The ALJ specifically discussed Ms. Ropp's observation that plaintiff is in pain for days after performing minor car repairs. The ALJ partially credited Ms. Ropp's testimony, noting that plaintiff's sedentary RFC was more limited than the physical activity described by Ms. Ropp. I conclude the ALJ's reason is germane to Ms. Ropp. Valentine, 574 F.3d at 694.

Nevertheless, plaintiff complains that the ALJ failed to discuss Ms. Ropp's testimony concerning plaintiff's use of his hands. In the Third Party Function Report, Ms. Ropp stated that plaintiff's "hands & elbows hurt; hands go numb, so he drops or can't feel things." Tr. 221. Ms. Ropp's testimony essentially echoes plaintiff's own description of his elbow and hand pain. Tr. 41, 54, 66, 68, 425. As noted above, the ALJ discussed the lack of objective medical evidence to support plaintiff's contention that he suffers ulnar nerve compression. Tr. 497, 544. Additionally, the ALJ specifically found plaintiff's complaints of debilitating elbow and hand pain to be incredible because they are inconsistent with his reports to medical providers that his elbow pain has been controlled with medication and a TENS unit. Tr. 22, 28. Again, the ALJ's credibility determination is unchallenged by plaintiff

and my review of the record confirms that the ALJ's determination
is supported by substantial evidence in the record.  Tr. 472, 484.

Therefore, even assuming *arguendo* that the ALJ erred in
failing to discuss Ms. Ropp's testimony concerning plaintiff's
elbow and hand pain, the error is harmless because the ALJ
appropriately discredited plaintiff's testimony describing the same
limitations.  Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir.
2012).

With respect to Ms. Ropp's description of plaintiff's mental
health limitations, the ALJ discussed that Ms. Ropp noted that
plaintiff sees and hears things that are not there, and that these
things make it difficult for plaintiff to follow instructions, and
that his he has difficulty getting along with others due to his
paranoia and delusions.  Tr. 28.  The ALJ discounted her testimony
as being inconsistent with plaintiff's own hearing testimony and
his treatment records which indicated that his symptoms are
improved when he is medication compliant and attends counseling.
Tr. 28.  I conclude this reason is germane to Ms. Ropp, is
supported by substantial evidence in the record, and that the ALJ
appropriately discounted her testimony on this basis.  Valentine,
574 F.3d at 694.

I reject plaintiff's assertion that the ALJ was required to
provide germane reasons for rejecting the alleged "primary theme"
of Ms. Ropp's testimony - that plaintiff is unable to sustain

activity for a full day.  In her Third Party Adult Function Report, Ms. Ropp stated that plaintiff cannot concentrate for longer than five to ten minutes.  Tr. 225.  At the hearing, plaintiff agreed that his mental health was improved with medication and counseling, but acknowledged that he was not taking his medication as prescribed.  Plaintiff also testified that he thought he could sustain concentration for only 15 minutes.  Tr. 74.  The ALJ rejected plaintiff's testimony that he suffered debilitating delusions and paranoia in part because he testified that these symptoms improved with medication.  Again, the negative credibility assessment is unchallenged.  The ALJ's findings are wholly supported by substantial evidence in the record.

Therefore, even assuming *arguendo* that the ALJ erred in failing to discuss Ms. Ropp's testimony that plaintiff cannot sustain full time work, the error is harmless because the ALJ rejected similar testimony from plaintiff.  <u>Molina</u>, 674 F.3d at 1122.

**IV.** **<u>Step Five</u>**

I have not identified any error committed by the ALJ and therefore, the hypothetical posed to the VE contained all the limitations deemed credible by the ALJ and supported by substantial evidence in the record.  Accordingly, the ALJ could rely upon the VE testimony.  <u>Valentine</u>, 574 F.3d at 694; <u>Stubbs-Danielson</u>, 539 F.3d at 1175-76.

18 - OPINION AND ORDER

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this __5__ day of JUNE, 2014.

Malcolm F. Marsh
United States District Judge

19 - OPINION AND ORDER